IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ISABELLA BUNOSSO, | : | |
| | : | |
| Plaintiff, | : | Case No. 2:25-cv-936 |
| | : | |
| v. | : | Judge Sarah D. Morrison |
| | : | |
| THE OHIO STATE UNIVERSITY ET. AL., | : | Magistrate Judge Chelsey M. Vascura |
| | : | |
| Defendants. | : | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS OSU, OSU BOARD OF TRUSTEES, MOHLER, CARTER, JR., GILLIAM, ZADNIK, BELLAMKONDA, MALKOC GOODMAN, GOODMAN, RECZEK, ALLENBY, AND MAYHEM'S MOTION TO PARTIALLY DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Plaintiff Isabella Bunosso, by and through her undersigned counsel, respectfully submits this Response in Opposition to Defendants The Ohio State University ("OSU"), The Ohio State University Board of Trustees ("Board of Trustees" or "Board"), Peter Mohler, Walter Carter, Jr., Melissa Gilliam, Karla Zadnik, Ravi Bellamkonda, Selin Malkoc Goodman, Joseph Goodman, Rebecca Reczek, Greg Allenby, and Melissa Mayhan's Motion to Partially Dismiss Plaintiff's Amended Complaint and Memorandum in Support ("Motion") (ECF No. 30).

**I.  STATEMENT OF FACTS**

Plaintiff Isabella Bunosso is an exceptionally talented and highly promising doctoral student in OSU's Max M. Fisher College of Business's Business Administration Marketing PhD program (the "Program"). Amended Complaint, ECF No. 27 at PageID 169, ¶ 1. She entered the Program with an outstanding academic record, an impressive history of research mentorship,

multiple publications, and prestigious awards that placed her among the strongest students in her cohort. *Id.* at PageID 169-171, ¶¶ 1-3.

Upon Ms. Bunosso's acceptance into the Program, Dr. Rebecca Reczek ("Defendant Reczek"), one of the Program's co-chairs, assigned Dr. Selin Malkoc Goodman ("Defendant Malkoc") as one of Ms. Bunosso's academic advisors. *Id.* at PageID 178, ¶ 50. During this period, Ms. Bunosso served as the lead researcher on multiple projects. She led the "*Consumer Response to Politicized Business Operations*" project and was designated first author, with Defendant Malkoc listed as third author. *Id*. at PageID 178-179, ¶¶ 52-53. She also led the "*Experiential Materialism or Consuming Experiences in a Materialistic Way*" project, again as first author, with Defendant Malkoc listed as third author and Dr. Joseph Goodman ("Defendant Goodman"), Defendant Malkoc's husband, listed as fourth author. *Id.* at PageID 179, ¶¶ 54-55.

Beginning on March 29, 2021, before Ms. Bunosso formally entered the Program, and continuing through January 2023, Defendants Malkoc and Goodman repeatedly subjected Ms. Bunosso to discrimination and harassment on the basis of sex. *Id*. at ¶ 56. Ms. Bunosso reported this conduct to Defendant Reczek multiple times. Id. at 179, ¶ 57. Defendant Reczec did nothing to intervene and prevent Defendants Malkoc and Goodman's harassment and retaliation and never told Ms. Bunosso that she had a right to file a Title IX complaint. *Id.* at ¶ 58.

Ms. Bunosso later learned of her right to file a Title IX complaint with OSU's Civil Rights Compliance Office ("CRCO"). *Id*. at PageID 180, ¶ 60. On March 1, 2023, after enduring nearly two years of ongoing abuse, Ms. Bunosso filed formal Title IX complaints against Defendants Reczek, Malkoc, and Goodman. *Id.* at PageID 180-183, ¶¶ 64-66. In her complaints, Ms. Bunosso detailed Defendants Malkoc, Goodman, and Rezac's pattern of sex-based harassment, discrimination, and retaliation, including excessive demands, intimidation tactics, humiliation,

2

gaslighting, disregard for grievances, absence of corrective action, and adverse treatment following her requests to be reassigned away from an abusive advisor. *Id.* In filing these complaints, Ms. Bunosso placed Melissa Mayhan ("Defendant Mayhan"), OSU's Deputy Associate Vice President and Title IX Coordinator, on notice of the discrimination and harassment she was experiencing. *Id.* at PageID 175, ¶ 33.

Despite CRCO's decision to open an investigation, Defendants Malkoc and Goodman's abuse against Ms. Bunosso continued. *Id*. at PageID 183-184, ¶¶ 67-73. As a result, on April 17, 2023, Ms. Bunosso filed a second CRCO complaint reporting that Defendant Goodman had retaliated against her by assigning responsibilities far exceeding those imposed on other students, in an apparent effort to create a false record that Ms. Bunosso was failing to meet her academic and employment obligations as punishment for filing her initial Title IX complaint. *Id.* at PageID 183, ¶¶ 67-69. Again, CRCO opened an investigation, but Defendants Malkoc and Goodman continued retaliating against Ms. Bunosso. *Id*. at PageID 183-184, ¶¶ 68-73 On May 22, 2023, Ms. Bunosso filed a third CRCO complaint alleging that Defendants Malkoc and Goodman retaliated against her by removing her name from the author list of a research project and working paper she had led, and by continuing work on a project without her involvement. *Id.* at PageID 183-84, ¶¶ 70-73.

As retaliation escalated, Ms. Bunosso sought protective measures. *Id*. at PageID 195, ¶ 135. On July 24, 2023, she requested reasonable safety accommodations from Dr. Greg Allenby ("Defendant Allenby"), including an alternative workspace, virtual presentation options to avoid contact with her harassers, and exemption from a course requirement that could only be fulfilled through direct interaction with Defendant Malkoc. *Id*. Defendant Allenby denied these requests just three days later, which forced Ms. Bunosso to continue working and presenting in an

3

environment saturated with ongoing retaliation, dependent on her abusers for critical Program requirements, and subject to evaluation by faculty members actively retaliating against her. *Id.* at PageID 195-196, ¶¶ 136-137.

On August 10, 2023, another student filed a complaint reporting that Defendant Malkoc retaliated against Ms. Bunosso through a targeted and inappropriate email sent to the entire Program listserv. *Id.* at PageID 184-185, ¶ 77. Shortly thereafter, on or about August 28, 2023, CRCO opened an investigation into this complaint and issued a notice of allegations alleging that Defendant Allenby had retaliated against Ms. Bunosso by pressuring her to withdraw her complaint against Defendant Reczek. *Id.* at PageID 186, ¶¶ 82-83. Between September 11 and September 18, 2023, Ms. Bunosso filed three additional CRCO complaints against Defendants Malkoc, Goodman, and Reczek. *Id.* at PageID 186, ¶¶ 84-86. These complaints alleged that Defendant Goodman obstructed Ms. Bunosso's academic progress and placed her degree in jeopardy; that Defendants Malkoc and Goodman excluded Ms. Bunosso from professional networking opportunities extended to all other students in the Program; and that that Defendant Reczek enlisted other faculty members to intimidate Ms. Bunosso into withdrawing her Title IX complaints. *Id.* at PageID 186-188, ¶¶ 88-90. On or around October 5, 2023, Defendants Malkoc and Goodman filed a retaliatory complaint against Ms. Bunosso with CRCO. *Id.* at PageID 188, ¶ 91. CRCO dismissed this complaint on January 22, 2024, finding "no reasonable cause to believe that a policy violation may have occurred." *Id.* at PageID 191, ¶ 108.

On or around November 15, 2023, CRCO completed its investigation into Ms. Bunosso's August 28, 2023, complaint against Defendant Allenby, finding that he had violated Title IX by retaliating against her. *Id.* at PageID 188, ¶ 93. Nevertheless, CRCO failed to issue any sanctions against Defendant Allenby until April 25, 2024, over five months later. *Id.* at PageID 192, ¶ 111.

4

Ms. Bunosso later learned that the sanctions were never implemented because Defendant Allenby had appealed them, but she was never notified of the appeal, in violation of federal law. *Id.* at PageID 200, ¶¶ 172-173. It was not until January 5, 2024, more than ten months after Ms. Bunosso's initial complaint, that CRCO finally issued no-contact directives between Ms. Bunosso and Defendants Malkoc, Goodman, and Reczek, despite Ms. Bunosso's repeated requests for such protection. *Id.* at PageID 190, ¶ 105.

Because Ms. Bunosso needed to communicate with Defendant Malkoc to complete ongoing research essential for graduation and competitiveness on the academic job market, she requested modifications to the no-contact directives on May 21 and June 17, 2024. *Id.* at PageID 192, ¶¶ 112, 115. CRCO failed to modify the no-contact directives until September 13, 2024, causing Ms. Bunosso to lose approximately four months of irreplaceable research time. *Id.* at PageID 193, ¶¶ 122-123. Meanwhile, Defendants Peter Mohler, Walter Carter, Jr., Melissa Gilliam, Ravi Bellamkonda, Karla Zadnik, and Mayhan failed to comply with Title IX and failed to train, supervise, discipline, and correct OSU administrators and employees, resulting in numerous violations of Ms. Bunosso's rights over the years. *Id.* at PageID 194, ¶¶ 124-128.

Defendants Malkoc and Goodman disparaged Ms. Bunosso to other students, causing her isolation, reputational harm, and lasting damage to her educational experience. *Id.* at 201, ¶¶ 184-187. In addition, CRCO's refusal to lift the no-contact directive involving Defendant Reczek infringed upon Ms. Bunosso's First Amendment rights and continues to impair her ability to participate fully in her education, as the directive remains in place to this day. *Id.* at 201-203, ¶¶ 189-196. Most significantly, Defendants' conduct substantially diminished Ms. Bunosso's competitiveness on the academic job market. *Id.* at 211-212.

As a result of Defendants' actions and inaction, Ms. Bunosso lost numerous critical professional and academic opportunities. *Id.* at PageID 194-201, ¶¶ 129-187. She missed important networking opportunities, was denied the ability to take her candidacy exam on schedule, was forced into unfavorable course scheduling, and was subjected to heightened administrative barriers to attending conferences required of all students. *Id.* at PageID 196-200, ¶¶ 140-181. She was selected to attend only two of three conferences that were automatically guaranteed to other students and was required to personally cover travel, lodging, and meal expenses that similarly situated students did not incur. *Id.* at PageID 205-209, ¶¶ 215-246. At one such conference, Defendants Allenby, Reczek, Malkoc, and Goodman engaged in retaliatory conduct that further damaged Ms. Bunosso's professional reputation in her field. *Id.* at PageID 209-210, ¶¶ 251-258.

When Ms. Bunosso entered the Program, she anticipated graduating in May 2025. *Id.* at PageID 178, ¶ 47. Due to her exceptional progress, she even explored accelerating her graduation to May 2024. *Id.* at PageID 211, ¶ 262. Instead, because of Defendants' actions and inaction, Ms. Bunosso's graduation has been delayed until at least May 2027. *Id.* at PageID 213, ¶ 281. Rather than launching her career, Ms. Bunosso remains trapped at OSU, exposed to continued retaliation and struggling to rebuild her academic standing and competitiveness. *Id.* at ¶ 282.

As a result of Defendants' actions and inaction, Ms. Bunosso has suffered severe physical, emotional, and psychological harm, including hypervigilance, panic episodes, intrusive thoughts, and prolonged depressive periods affecting her sleep, concentration, and daily functioning. *Id*. at ¶ 283. She has been diagnosed with post-traumatic stress disorder, anxiety, and depression. *Id*. Ms. Bunosso has lost confidence, motivation, and joy in the work she once loved. *Id*. She has incurred substantial additional expenses, endured years of delay in her education, and faces uncertainty as to whether she will ever fully recover the professional opportunities taken from her. *Id*.

Taken together, these facts describe not only a devastating personal and professional ordeal, but a sustained pattern of discrimination, retaliation, and institutional indifference that violates Ms. Bunosso's rights under state and federal law. Defendants' actions and inaction deprived Ms. Bunosso of equal access to educational opportunities, subjected her to ongoing retaliation for engaging in protected activity, and caused her severe and lasting personal, professional, physical, and emotional harm. For the reasons set forth below, this Court should hear and adjudicate the claims asserted in the Amended Complaint.

## II. STANDARD OF REVIEW

### A. Eleventh Amendment

Defendants first move for partial dismissal of Counts II, III, IV, and V and total dismissal of Counts VII and VIII and total dismissal under Fed. R. Civ. P. 12(b)(2), arguing that this Court lacks jurisdiction to adjudicate certain claims based on sovereign immunity under the Eleventh Amendment. Courts within the Sixth Circuit have held that an Eleventh Amendment immunity defense is properly analyzed as a challenge to personal jurisdiction, not subject-matter jurisdiction. *Plain Local Sch. Dist. Bd. of Educ. v. DeWine*, 486 F. Supp. 3d 1173, 1187 (S.D. Ohio 2020) (quoting *Ku v. State of Tenn.*, 322 F.3d 431, 432 (6th Cir. 2003)).

It is long established that when evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(2), a court must construe the pleadings and any supporting affidavits in the light most favorable to the plaintiff. *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991) (citing *Serras v. First Tenn. Bank Nat. Ass'n*, 875 F.2d 1212 (6th Cir. 1989); *Welsh v. Gibbs*, 631 F.2d 436 (6th Cir. 1980)). A court has discretion to decide a Fed. R. Civ. P. 12(b)(2) motion based solely on the written submissions, permit jurisdictional discovery, or conduct an evidentiary hearing. *Jones v. Sexton*, No. 3:23-cv-01033, 2025 U.S. Dist. LEXIS 209971, *15 (M.D. Tenn.

7

Oct. 24, 2025) (quoting *Elcan v. FP Assocs. LTD*, Case No. 3:19-CV-01146, 2020 U.S. Dist. LEXIS 93277, at *3 (M.D. Tenn. May 28, 2020) (citing *Inc. v. Imago Eyewear Pty., Ltd.*, 167 F. App'x 518, 520 (6th Cir. 2006))). When a court rules without conducting an evidentiary hearing, the plaintiff's burden of proof is only "'relatively slight.'" *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 899 (6th Cir. 2017) (quoting *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007)). At this stage, a plaintiff need only make a *prima facie* showing of jurisdiction, and dismissal is improper where the jurisdictional facts, viewed in the plaintiff's favor, support the exercise of jurisdiction.

      **B.**    **The remainder of Defendants' arguments are properly addressed under Fed. R. Civ. P. 12(b)(6).**

Defendants also argue that Count V of the Amended Complaint should be dismissed as to all named defendants for failure to state a claim upon which relief can be granted. To survive a motion to dismiss, a complaint must contain a "short a plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The United States Supreme Court has held that a complaint is only properly dismissed under Rule 12(b)(6) when it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard is more than a sheer possibility, but it is not a probability requirement. *See Twombly*, 550 U.S. at 556. A complaint states a plausible claim for relief "'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Vest v. Resolute FP US Inc.*, 905 F.3d 985, 987 (6th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570 (2007))). In reading the alleged facts, the court must "'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.'" *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th

8

Cir. 2016) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). Therefore, "a well-pleaded complaint may proceed even if it strikes a savvy judge that the actual proof of the facts alleged is improbable and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal citations omitted).

Motions to dismiss based on Eleventh Amendment immunity fall under Rule 12(b)(1), which encompasses dismissals for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1); *Crump v. Blue*, 121 F.4th 1108, 1113 (6th Cir. 2024). As with Rule 12(b)(6) motions to dismiss, facial challenges to subject-matter jurisdiction under Rule 12(b)(1) test the sufficiency of the pleading; thus, courts must similarly accept well-pleaded allegations in the complaint as true. *Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).

### III. ARGUMENT

#### A. Plaintiff is entitled to prospective injunctive relief under *Ex parte Young*.

The Amended Complaint asserts multiple federal claims under 42 U.S.C. § 1983 arising from ongoing constitutional violations by state officials acting in their official capacities, as well as several state law claims. Specifically, Plaintiff brings a claim of an as-applied violation of the First Amendment against Defendants Reczek and Mayhan in their official capacities (Count II); a claim of First Amendment retaliation against OSU and the OSU Board of Trustees (collectively, the "OSU Defendants") as well as Defendants Malkoc, Goodman, Reczek, Allenby, and Mayhan in their official capacities (Count III); claims of denial of substantive due process and equal protection against Defendants Malkoc, Goodman, Reczek, Allenby, and Mayhan in their official capacities (Count IV); and a claim of failure to train and supervise against Defendants Mohler, Carter, Gilliam, Zadnik, Bellamkonda, and Mayhan in their official capacities (Count V). Amended Complaint, ECF No. 27 at PageID 217-225. Plaintiff also asserts state law claims for

9

discrimination (Count VII) and intentional infliction of emotional distress (Count VIII) against Defendants Malkoc, Goodman, Reczek, and Allenby. *Id.* at PageID 228-231.

Defendants seek dismissal of the OSU Defendants from these claims in their entirety; dismissal of Plaintiff's claims for monetary damages against the individually named Defendants to the extent that such claims are asserted against them in their official capacities; and dismissal of all Plaintiff's state law claims on the ground that the Eleventh Amendment purportedly bars all of these claims. For the reasons explained below, these arguments fail.

### 1. *Ex parte Young permits prospective relief against state officials for ongoing violations of federal law.*

The Eleventh Amendment generally bars suits against a State or its agencies in federal court. U.S. Const. amend. XI. When a party asserts Eleventh Amendment immunity, that party carries the burden to show that it is "entitled to immunity," including demonstrating that it is an "arm of the state." *Lowe v. Hamilton Cty. Dep't of Job & Family Servs.*, 610 F.3d 321, 324 (6th Cir. 2010). However, sovereign immunity is subject to a critical and well-established exception. In *Ex parte Young*, the Supreme Court held that the Eleventh Amendment does not bar suits against state officials in their official capacities when a plaintiff seeks prospective declaratory or injunctive relief to end an ongoing violation of federal law. 209 U.S. 123, 159-62 (1908). The rationale underlying this exception is straightforward: a state official who enforces or maintains an unconstitutional policy is not acting lawfully on behalf of the State and therefore cannot invoke the State's immunity to shield unconstitutional conduct from judicial review. *Id.*

The Supreme Court has repeatedly confirmed that federal courts have jurisdiction over such claims. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983) ("It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights."). The Sixth Circuit applies a two-part inquiry: (1) the complaint must allege an ongoing

violation of federal law; and (2) the relief sought must be properly characterized as prospective and injunctive. *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Plaintiff has satisfied both requirements for each of her claims seeking injunctive relief against individual Defendants acting in their official capacities.

### 2. *Counts II and III seek only declaratory and injunctive relief and are not subject to Eleventh Amendment dismissal.*

Defendants move to dismiss Counts II and III of the Amended Complaint "to the extent they seek monetary damages from individual Defendants in their official capacities." Defendants' Motion to Dismiss, ECF No. 30 at PageID 297. This argument fails for a simple reason: Plaintiff does not seek monetary damages in Counts II or III. Count II alleges an as-applied violation of Ms. Bunosso's First Amendment right to freedom of speech and association and seeks only declaratory and injunctive relief. Amended Complaint, ECF No. 27 at PageID 218, ¶ 299. Count III alleges ongoing First Amendment retaliation and likewise seeks only declaratory and injunctive relief to prevent future constitutional violations. *Id.* at PageID 221, ¶ 309.

Plaintiff acknowledges that *Ex parte Young* does not apply to the OSU Defendants.[1] However, the individual Defendants responsible for the alleged constitutional violations are proper defendants under *Ex parte Young* in their official capacities. Accordingly, dismissal of Counts II and III on Eleventh Amendment grounds is unwarranted.

### 3. *Counts IV and V properly seek prospective relief for ongoing violations of Plaintiff's rights to substantive due process and equal protection.*

Count IV of the Amended Complaint alleges that Defendants Malkoc, Goodman, Reczek, Allenby, and Mayhan violated and continue to violate Ms. Bunosso's rights to substantive due

---

[1] The inclusion of the OSU Defendants in Count III was a typo.

11

process and equal protection by discriminating against her based on her sex and retaliating against her for filing Title IX complaints. Amended Complaint, ECF No. 27, PageID 223, ¶¶ 313-314. Count V alleges that Defendants Mohler, Carter, Gilliam, Zadnik, Bellamkonda, and Mayhan were responsible for and failed to adequately train, supervise, discipline, and correct subordinate employees who are actively violating Ms. Bunosso's constitutional rights. *Id*. at PageID 224, ¶¶ 320-330. The Amended Complaint alleges that these failures are not historical or isolated but are ongoing. *Id.* at PageID 179, ¶¶ 58, 60; PageID 195, ¶ 137; PageID 200, ¶ 179; PageID 204, ¶ 202; PageID 208-209, ¶ 244; PageID 213, ¶ 282; PageID 215-216, ¶ 290; PageID 221, ¶¶ 307, 309. Ms. Bunosso seeks injunctive relief to prevent Defendants from continuing to violate her constitutional rights.

These allegations satisfy the *Ex parte Young* standard. The Amended Complaint does not allege only completed past injuries; rather, it alleges continuing constitutional violations. Declaratory relief would clarify Ms. Bunosso's rights and Defendants' obligations under the Fourteenth Amendment, while injunctive relief would require Defendants to cease unconstitutional directives and practices.

The Sixth Circuit has made clear that where a plaintiff plausibly alleges ongoing constitutional violations, claims for prospective relief against state officials in their official capacities are not barred by sovereign immunity. *Ladd*, 971 F.3d at 581. To hold otherwise would allow state officials to avoid accountability for ongoing unconstitutional practices simply by invoking sovereign immunity. Therefore, Counts IV and V survive Defendants' Eleventh Amendment challenge.

12

### 4. *The Eleventh Amendment does not bar Plaintiff's state law claims.*

Defendants argue that the Eleventh Amendment bars Plaintiff's state law claims because this action was filed in federal court. That argument misstates the scope of Eleventh Amendment immunity and confuses official-capacity claims with individual-capacity liability. The Eleventh Amendment "enacts a sovereign immunity from suit, rather than a nonwaivable limit on the federal judiciary's subject-matter jurisdiction." *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997). Its core purpose is to protect a State itself from being brought into federal court and from having judgments entered against a state treasury. *Id.* at 311-12. Accordingly, the Eleventh Amendment bars claims against state officials sued in their official capacities where the relief sought would operate against the State itself. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 117 (1984).

Nevertheless, the Eleventh Amendment does not extend to state officials sued in their individual capacities, even when the alleged conduct occurred in the course of their public duties. *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991). The Supreme Court has made clear that individual-capacity suits "seek to impose individual liability upon a government officer for actions taken under color of state law" and therefore do not implicate a State's sovereign immunity. *Id.* at 25.

Here, the state law claims asserted against Defendants Malkoc, Goodman, Reczek, and Allenby in their individual capacities seek to hold them personally liable for their own tortious conduct. Ms. Bunosso does not seek relief from the state treasury, does not seek to compel the State of Ohio to act, and does not seek enforcement of state law against the State itself. Whether Defendants acted within the scope of their public duties and without malicious purpose, bad faith, or wanton or reckless conduct are factual questions that cannot be resolved via a motion to dismiss.

13

*See Fabrey v. McDonald Village Police Dep't*, 70 Ohio St. 3d 351, 356; 639 N.E.2d 31 (Ohio 1994). Further, these questions do not implicate the Eleventh Amendment.

Moreover, while there is support for state court jurisdiction over Ms. Bunosso's state claims, Fed. R. Civ. P. 42(a) allows for consolidation of related claims to promote judicial efficiency. "Rule 42 grants a federal court the authority to 'join for hearing or trial any or all matters at issue in the actions' if the actions before the court have a common question of law or fact. A court may consolidate cases with or without the consent of the parties." *Nayyar v. Mt. Carmel Health Systems*, No. 2:12-CV-00189 at *7 (S.D. Ohio 2018), quoting *Cantrell v. GAF Corp.*, 999 F.2d 1007, 1010-11 (6th Cir. 1993). "When a court decides whether to consolidate cases, the Sixth Circuit directs the court to consider:

> [W]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives."

*Nayyar*, No. 2:12-CV-00189 at *7 (quoting *Cantrell*, 999 F.2d at 1011 (6th Cir. 1993) (quoting *Hendrix v. RaybestosManhattan, Inc*., 776 F.2d 1492, 1495 (11th Cir.1985)).

Here, Defendants have identified no risks of prejudice or possible confusion, and Ms. Bunosso is unaware of any. Adjudicating the state claims along with the federal claims would lessen the burden on the parties, witnesses, and the state and federal court systems in terms of both time and financial resources. No additional time will be required to adjudicate the state and federal claims, as discovery can be performed concurrently and there will be many overlapping witnesses and significant overlapping evidence. The expenses to all involved will be reduced by proceeding with one, rather than multiple, trials.

Finally, the Court may exercise supplemental jurisdiction over Ms. Bunosso's state law claims pursuant to 28 U.S.C. § 1367 because they arise from the same set of operative facts as her federal claims. The Eleventh Amendment does not prohibit federal courts from exercising supplemental jurisdiction over state law claims against individuals. It bars only those claims that would operate against the State itself. *Pennhurst*, 465 U.S. at 121. Ms. Bunosso seeks relief from the individual Defendants named in the state law claims for their own individual conduct, not relief from the State of Ohio or its treasury. And any question of state law immunity is a merits issue, not a jurisdictional bar under the Eleventh Amendment. Finally, this Court has previously chosen to exercise jurisdiction over state tort claims related to alleged Title IX and constitutional violations. *See Doe v. Finneytown Local Sch. Dist.*, No. 1:18-cv-668 at *13-18 (S.D. Ohio Nov. 16, 2021) (exercising jurisdiction over state law claims of negligence and intentional infliction of emotional distress).

### B. Plaintiff has sufficiently pleaded a claim for failure to train and supervise.

Defendants argue that Plaintiff's § 1983 claim of failure to train and supervise should be dismissed because the Amended Complaint lacks sufficient factual specificity. This argument misapplies the governing Sixth Circuit standard and ignores the detailed allegations set forth in the pleading.

In the Sixth Circuit, supervisory liability under § 1983 does not arise from *respondeat superior*. Rather, a plaintiff must allege that the supervisory defendant "either encouraged the specific incident of misconduct or in some other way directly participated in it." *McCoy v. Carlson*, No. 3:17-cv-432, 2020 U.S. Dist. LEXIS 13230, 2020 WL 419439, at *7-8 (S.D. Ohio Jan. 27, 2020) (quoting *Phillips v. Roane Cnty., Tenn.*, 534 F.3d 531, 543 (6th Cir. 2008)). "At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or

15

knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Coley v. Lucas Cnty., Ohio*, 799 F.3d 530, 542 (6th Cir. 2015) (quoting *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995)).

The Amended Complaint satisfies this standard, as it does not merely recite conclusory allegations of supervisory failure but alleges that Defendants Mohler, Carter, Gilliam, Zadnik, Bellamkonda, and Mayhan were aware of ongoing constitutional violations, had the authority to intervene, and failed to supervise, discipline, or correct the unconstitutional conduct, thereby allowing the unconstitutional behavior to continue. Amended Complaint, ECF No. 27 at PageID 203, ¶¶ 197-201; PageID 212-213, ¶¶ 277-280; PageID 223-225; ¶¶ 320-330. These allegations constitute the direct participation required under Sixth Circuit precedent. Moreover, the Amended Complaint alleges that Defendants' failures were not negligent or inadvertent, but the result of deliberate indifference, meaning that Defendants knew of a substantial risk of constitutional harm and consciously disregarded it. *Id.* at PageID 225; ¶¶ 331-332. Allegations of deliberate indifference and knowing disregard are sufficient to plead supervisory liability at the motion to dismiss stage. *See Coley*, 799 F.3d at 542; *Phillips*, 534 F.3d at 543.

Defendants' argument improperly reframes the allegations in the Amended Complaint as conclusory statements. But the Amended Complaint alleges exactly how the Defendants participated: by failing to intervene despite notice, failing to correct known unconstitutional practices, and maintaining conditions that permitted ongoing violations. Amended Complaint, ECF No. 27 at PageID 203, ¶¶ 197-201; PageID 212-213, ¶¶ 277-280; PageID 223-225; ¶¶ 320-330. Defendants' conduct, as alleged, plausibly establishes implicit authorization and approval of the unconstitutional acts at issue. At this stage, Ms. Bunosso is not required to prove her case or detail every training deficiency or supervisory lapse. She must only allege facts that, taken as true,

16

plausibly show supervisory officials' knowing involvement in constitutional violations. Ms. Bunosso has done so here. Accordingly, her § 1983 claim of failure to train and supervise is sufficiently and should not be dismissed.

### C. Plaintiff concedes that she cannot bring a Title IX claim against individual Defendants.

Plaintiff acknowledges that Title IX does not provide for individual liability. Accordingly, Plaintiff does not oppose dismissal of her Title IX claim to the extent it is asserted against the individual Defendants and maintains her Title IX claim solely against the OSU Defendants.

### D. Plaintiff concedes that she cannot bring a Title VII claim against individual Defendants.

Plaintiff acknowledges that Title VII does not provide for individual liability. Accordingly, Plaintiff does not oppose dismissal of her Title VII claim to the extent it is asserted against the individual Defendants and maintains her Title VII claim solely against the OSU Defendants.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' Motion to Partially Dismiss Plaintiff's Amended Complaint.

Respectfully submitted,
ABDNOUR WEIKER LLP

*/s/ Jessica N. Moore*
Jessica N. Moore (0101098)
Elizabeth K. Abdnour (0081795)
262 S. Third Street
Columbus, Ohio 43215
T: (614) 745-2001
F: (614) 417-5081
liz@education-rights.com
jessica@education-rights.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

      I certify that on January 23, 2026, I filed this document by use of this Court's ECF system, which will serve copies to the Clerk of Courts and all counsel of record.

                                                */s/ Jessica N. Moore*
                                                Jessica N. Moore